IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2016 APR 25   AM 9: 16

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

KRISTOPHER BUESING,

        **Plaintiff,**

-vs-                                                    Case No.  A-16-CA-286-SS

MICHAEL   HONEYCUTT   and   TRAVIS
COUNTY,

        **Defendants.**

## O R D E R

    BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Kristopher Buesing's Amended Petition and Request for Disclosures [#1-7]; Defendant Michael Honeycutt's Motion to Dismiss Pursuant to Rule 12(b)(6) [#5]; Plaintiff's Response [#8] thereto; and Defendant's Reply [#9] in support.  Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

**Background**

    This is a civil rights action brought by Plaintiff Kristopher Buesing against Travis County and Michael Honeycutt, a Travis County Sheriff's deputy.  Buesing claims Honeycutt violated his Fourth and Fourteenth Amendment rights when Honeycutt restrained him using handcuffs that were too tight, causing severe injury to Buesing's hand and wrist.

    According to his pleadings, which the Court must accept as true, Honeycutt arrested Buesing for driving while intoxicated on February 13, 2014.  Buesing did not resist the arrest and was polite

and cooperative, even telling Honeycutt "I understand I'm being arrested" and "I'm cool with being arrested."

Buesing, who describes himself as "morbidly obese, and a very large man," claims it should have been obvious to Honeycutt his wrists were too large for the standard pair of handcuffs and required the use of a larger restraining device. However, despite his size, Honeycutt placed Buesing in a standard-sized pair of handcuffs and ushered him into the back of the squad car.

Over the course of the next fifteen minutes, while Honeycutt was transporting him to the Travis County Jail for booking, Buesing repeatedly complained he was in pain and losing feeling in his hands. Buesing told Honeycutt "my hand is numb," "I can't feel my fingers," "my fingers are real numb," and then moaned "my hands, my hands." Buesing alleges Honeycutt did nothing in response to his outcries, failing to loosen the handcuffs, apply a different restraining device, or check on his condition. Honeycutt instead told Buesing "those handcuffs aren't getting any looser than they are." Buesing claims Honeycutt did nothing to relieve his pain until Buesing was booked into custody at the jail, where the handcuffs were removed.

After being released from custody, Buesing filed an internal affairs complaint. During the investigation, Honeycutt acknowledged knowing Buesing was in pain but claimed "I never heard of nerve damage from handcuffs." Buesing claims Honeycutt later recanted, stating he actually knew "radial neuropathy is quite common with handcuffs" but that he thought "there was nothing else I could have done to relieve the tension on [Buesing's] wrists. . . ."

As a result of this incident, Buesing suffered severe damage to his hand and wrist, requiring corrective surgery. Buesing has still not fully recovered from the injury.

On March 4, 2015, Buesing initiated this lawsuit in the 353rd District Court of Travis County alleging violations of state law.  Notice Removal [#1-2] Ex. 2 (Orig. Pet. & Req. for Disclosures).  Buesing later amended his pleading to add federal claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *See Id.* [#1-7] Ex. 7 (Pl.'s Am. Pet. and Req. for Disclosures).  Buesing's Amended Petition, the presently operative pleading, asserts § 1983 claims against Honeycutt in his individual capacity, alleging Honeycutt (1) used excessive force in violation of the Fourth Amendment when he placed Buesing in handcuffs that were too tight even though he posed no danger to anyone, and (2) was deliberately indifferent to Buesing's serious medical need in violation of the Fourteenth Amendment when he failed to loosen or remove the handcuffs while en route to Travis County Jail, thereby causing severe and permanent injury.  Buesing separately asserts *Monell* claims against Travis County as well as claims for violations of the ADA, the Rehabilitation Act, and the Texas Torts Claims Act.

On March 10, 2016, Travis County removed the action to this Court.  *Id.* [#1].  On March 18, 2016, Honeycutt filed the instant motion to dismiss both claims against him under Rule 12(b)(6) for failure to state a claim and on the basis of qualified immunity, which is now ripe for decision.[1]

## Analysis

### 1.    Legal Standard—Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A

---

[1] Travis County has not filed a motion to dismiss.  Consequently, the sufficiency of Buesing's claims against it are not before the Court.

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.  Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully.  *Id.*  Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint.  *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Application

### 1.   Qualified Immunity

The doctrine of qualified immunity shields government officials, such as law enforcement officers, performing discretionary functions in the course of their official duties from liability as well as from suit. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). A plaintiff bears the burden of negating a properly raised qualified immunity defense. *Id.*

The Supreme Court has articulated a two-part test for resolving government actors' claims of qualified immunity: a court must determine both (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (internal quotation marks and citations omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Although the Supreme Court once required these questions be answered in order, and doing so is still advisable, courts have discretion to address either question first. *Pearson*, 555 U.S. at 236.

### 1.   Fourth Amendment Excessive Force Claim

Buesing alleges Honeycutt violated his Fourth Amendment rights by using excessive force in handcuffing Buesing too tightly.

It is clearly established individuals have the right under the Fourth Amendment to be free from excessive force during such a seizure. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir.

2012) (citation omitted).  To establish a claim of excessive force, a plaintiff must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  Whether the force used was excessive or unreasonable depends on the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (2010).  In making this determination, the Court has been directed to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Poole*, 691 F.3d at 627–28 (quoting *Graham*, 490 U.S. at 396).  The court may also consider "extent of [the] injury inflicted" to determine whether an officer's force was excessive. *Deville v. Mercantel*, 567 F.3d 156, 168 (5th Cir.2009) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

The Fifth Circuit has held that "handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).  In *Glenn*, the plaintiff alleged the officer placed handcuffs on her too tightly, causing her wrist to swell, but she did not allege the officer touched her or otherwise acted with malice. *Id.*; *see also Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) ("Minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."); *Tarver*, 410 F.3d at 751–52.  In contrast, applying handcuffs too tightly has been found to constitute excessive force where the detainee suffered severe or permanent injury requiring medical treatment. *See, e.g.*, *Deville*, 567 F.3d at 168 (handcuffing "so tightly as to cause long-term nerve damage that was severe enough to require four surgeries" could support an excessive force claim); *Heitschmidt v. City of Hous.*, 161 F.3d 834, 839–40 (5th Cir. 1998) (handcuffing too tightly and without

justification for a significant period of time despite plaintiff's complaints, leading to serious and permanent injury requiring medical treatment, stated a claim for excessive force); *accord Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (finding no excessive force where plaintiff admitted he did not complain of pain while handcuffed and did not receive medical care for his injury); *see also Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 23–24 (D.D.C. 2011) ("Almost every Court of Appeals has held that overly tight handcuffing can constitute excessive force, where the handcuffing has resulted in injury or where an individual complains about the overly-tight cuffing." (collecting cases)).

Considering the factors outlined in *Graham*, and considering the authority cited above, the Court finds Buesing has stated a plausible claim Honeycutt used more force than was reasonably necessary in violation of Buesing's Fourth Amendment rights.  Most importantly, the allegedly severe and permanent damage to Buesing's hand and wrist indicates that excessive force may have been used. *See Brown v. Lippard*, 472 F.3d 384, 386–87 (5th Cir. 2006) ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to unjustified infliction as is tantamount to a knowing willingness that it occur." (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986))).  However, Buesing also claims he repeatedly told Honeycutt he was in pain and losing feeling in his hand and fingers and that he requested help while in the back fo the patrol car.  On notice the handcuffs were too tight, Honeycutt did not loosen or remove the restraints or even check on Buesing's condition.  Considering he was not arrested for a violent crime and was fully cooperative throughout the arrest, the facts alleged do not reflect a justification for

requiring Buesing to remain restrained in a standard pair of handcuffs once Honeycutt was aware of the pain he was suffering.

In his defense, Honeycutt argues he used no more force than was reasonably necessary because the only actions he took—handcuffing Buesing and driving him to Travis County Jail—were made in the course of an ordinary arrest, pursuant to Travis County policy, and with approved equipment. However, this was not an ordinary arrest; Buesing was morbidly obese and alleges Honeycutt should have known he would not fit in the approved pair of handcuffs. Blind observance of an official policy is not a defense to the unconstitutional use of force. While discovery may uncover additional facts tending to show Honeycutt had a legitimate and justifiable reason for his actions, Buesing has at least stated a claim the use of force was excessive to the need and in violation of the Fourth Amendment.

Turning to the second step in the qualified immunity analysis, Honeycutt contends he is nonetheless entitled to dismissal because his actions were objectively reasonable in light of clearly established law at the time the arrest was made. The central purpose of the "clearly established" inquiry is to determine whether "prior decisions gave reasonable warning that the conduct at issue violates constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). Here, the Court finds the prior decisions cited above gave Honeycutt fair warning overly tight handcuffs could amount to excessive force if they result in severe or permanent injury. In light of this clearly established law, the Court cannot conclude Honeycutt's conduct was reasonable as a matter of law based on the pleadings. The issue of qualified immunity must be decided on an evidentiary basis on summary judgment or at trial.

Based on the foregoing, the Court DENIES Honeycutt's motion to dismiss as to Buesing's Fourth Amendment excessive force claims.

### 2.      Fourteenth Amendment Deliberate Indifference Claim

Honeycutt also raises qualified immunity with respect to Buesing's claim Honeycutt was deliberately indifferent to his serious medical needs when Honeycutt failed to loosen or remove the handcuffs on the fifteen-minute ride to Travis County Jail for booking.

The Fourteenth Amendment protects pretrial detainees from an officer's deliberate indifference to their serious medical needs.  To establish deliberate indifference, a plaintiff must establish (1) the defendant had subjective knowledge of "facts from which an inference of substantial risk of serious harm could be drawn," (2) the defendant drew that inference, and (3) the defendant's response to the risk indicates he "subjectively intended the harm to occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)  (citing *Thompson v. Upshur Cty.*, 245 F.3d 447, 458–59 (5th Cir. 2001)).  "Mere negligence or a failure to act reasonably is not enough." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th cir. 2003).

Based on the facts alleged, the Court finds Buesing has stated a Fourteenth Amendment claim for deliberate indifference to his serious medical needs.  Buesing repeatedly told Honeycutt the handcuffs were too tight and causing him to lose sensation in his fingers and, in response, Honeycutt did nothing to loosen or remove the cuffs and did not otherwise check on Buesing's condition.  As a result of Honeycutt's conduct, Buesing suffered severe and permanent damage to his hand and wrist.  Honeycutt argues he is not liable because although he "may have known that Buesing was expressing discomfort in the handcuffs on the short fifteen minute ride . . . he did not draw the inference that Buesing was . . . suffering from a serious medical condition, i.e. neuropathy." Reply

[#9] at 4–5.  The Court disagrees.  An officer need not infer a substantial risk that the precise harm suffered by a plaintiff would occur, but rather need only infer a substantial risk of some type of serious harm.  Here, even assuming Honeycutt did not draw the inference tight handcuffs could lead to neuropathy, the extent of Buesing's outcries was sufficient for a fact-finder to conclude Honeycutt knew of and disregarded the substantial risk failing to loosen the handcuffs would lead to serious harm.  Buesing has adequately stated a claim for the deprivation of his Fourteenth Amendment rights.

As with the excessive force claim, the Court finds the second step of qualified immunity is better decided on a developed record at summary judgment or at trial.  At the time of Buesing's arrest, an officer violated a pretrial detainee's clearly established rights if they "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."  *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 293–94 (5th Cir. 2000).  Based solely on the pleadings, the court cannot conclude that Honeycutt acted reasonably in light of clearly established law when he disregarded clear signs of Buesing's distress.

Honeycutt's motion to dismiss Buesing's Fourteenth Amendment deliberate indifference claims is DENIED.

### Conclusion

Buesing has adequately stated constitutional claims against Honeycutt for violations of his Fourth and Fourteenth Amendment rights.  Considering the fact-sensitive nature of Buesing's claims, whether Honeycutt's actions were objectively reasonable in light of clearly established law is best decided at a later stage in the proceeding.

Accordingly,

IT IS ORDERED that Defendant Michael Honeycutt's Motion to Dismiss Pursuant to Rule 12(b)(6) [#5] is DENIED.

SIGNED this the 22nd day of April 2016.


SAM SPARKS
UNITED STATES DISTRICT JUDGE